IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARL MILLER,

   Plaintiff,

Vs.

NORTH BELLE VERNON
BOROUGH, et al.,

   Defendants.

C.A. No. 8-1435

**OPINION AND ORDER**

**SYNOPSIS**

In this civil action, Plaintiff, now proceeding pro se, asserts claims for violation of 42 U.S.C. § 1983, stemming from events occurring at a council meeting of the Defendant Borough, which was attended by members of the public. In brief, Plaintiff and other citizen attendees spoke at the meeting. Eventually, Defendant Simboli, Borough President, warned Plaintiff that he would be removed from the meeting. Defendant Lyons, the Mayor, then directed Defendant Naylor, a police officer, to remove Plaintiff. Defendant Naylor acted on that directive. Plaintiff now brings suit for intentional infliction of emotional distress, as well as First Amendment retaliation, suppression, and political discrimination.

Before the Court are the parties' cross-motions for summary judgment. For the following reasons, the Defendants' Motion will be granted in part, and the remainder denied, and Plaintiff's will be denied.

**OPINION**

**I. FACTS**

Primarily, the background of this case is supplied by minutes and transcript of the subject meeting, and Plaintiff's deposition. Defendants explain that they did not submit the depositions of Lyons, Simboli, or fact witness Drew Rainey, because they were unable to timely obtain transcripts, due in part to Plaintiff's failure to pay the court reporter. Defendants did not file a motion for extension of time pursuant to Fed. R. Civ. P. 56(f); nor did they submit their own affidavits. I attempted to listen to the audiotaped recording of the meeting; the recorded voices were muffled and barely comprehensible on the playback device readily available to me. As of the date of this Opinion, neither part has proffered a supplemental record; thus, this Opinion reflects the facts that are absent from the record, as much as those that are present.

The controversy in this case surrounds events occurring at a North Belle Vernon Borough Council ("Borough Council") Regular Meeting on October 10, 2006. Upon entering the meeting, attendees were presented with a sheet of paper where, if they wished to speak, they were to sign their names and note the subject that they wished to talk about. Typically, the council then would the announce names in sequence. Several attendees who spoke at the October 10th meeting did not note the subject they wished to talk about. In addition, one person spoke who had not signed her name to the sheet.

The sign-in sheet from the meeting at issue bears a handwritten notation, "Limit of 5 minutes per visitor," and a typed notation, "REMARKS FROM VISITORS WILL BE HEARD ONLY UNDER PUBLIC PARTICIPATION." There is no evidence of any other written rules governing Borough Council meetings.[1] Moreover, there is no evidence that citizen speakers were actually timed when they spoke, and no evidence of how long each speaker in fact spoke.

---

[1] As Plaintiff stated in his deposition, "[i]t's not Robert's rules of order type thing." "Roberts Rules of Order is a parliamentary manual whose provisions govern legislative bodies and other deliberative assemblies." Mobley v. Tarlini, 641 F. Supp. 2d 430, 435 n. 4 (E.D. Pa. 2009).

There is no evidence that any speaker other than Plaintiff, when called upon to speak, was verbally advised that he could speak for five minutes.

According to the Defendant's transcription of the recording,[2] Defendant Simboli opened the meeting with a statement:

> Simboli:….I ask for your respect particularly when you address this council. I will not have other conversations going on in the room while somebody is speaking. If you get arrogant and you start getting out of control I will warn you the first time. The second time the Mayor will take it from there and the officer will remove you. We don't want these meetings to get out of control. We want to keep everything orderly.
> \*\*\*
> Well, I'll tell you what I'm going to do, I'm going to take [the names] as they're written so we don't have a problem, okay. Mr. Miller, you can go first.
>
> Plaintiff: [inaudible] ask that others go before me [inaudible].
>
> Simboli: Now let's not start off on the wrong foot….I don't want to be going back and forth here buddy. Your name is first so you got five minutes to address.
>
> Plaintiff: The only reason I came here tonight was because I have an article here from the Valley Independent…My only question is, there is some remarks in here by Lyons said "Miller is just one person who has a junkyard in North Belle Vernon." Was there a public….were those remarks made at a public meeting….
>
> Simboli: Where were they [inaudible]?
>
> Plaintiff: Were they made at a special meeting?
>
> Simboli: No sir.
>
> Miller: It is your understanding that these were his personal remarks?
>
> Simboli: Don't ask me. I can't answer that.
>
> Miller: Were those your personal remarks Mr. Lyons?

---

[2] Both parties submit unofficial transcripts of the meeting. Generally speaking, unsworn transcripts are not competent summary judgment evidence. See, e.g., Donald v. United States, No. 9-8044, 2010 U.S. Dist. LEXIS 110192, at \*13 (D. Ariz. Oct. 15, 2010). Nonetheless, I will consider the transcripts because both parties submit them, and they are materially similar, except where otherwise noted. I refer here to Defendants' submission, because Plaintiff's contains several paraphrased descriptions of the meeting.

Lyons:  Have you ever cooperated with us?  If you have something to say, say it.  You are not going to inquisition me.

Plaintiff:  [inaudible]

Lyons:  No, you are not going to inquisition me, okay?  If you have something to say, you say it.

Plaintiff:  I don't have to inquisition you.

Lyons:  If you have something to say, you say it,

Plaintiff:  Did you make those remarks to [the reporter]?

Lyons:  I'm not responding.

Plaintiff:  Well, [the reporter] has already responded.  I'm just glad to know that they weren't made at a public meeting and there was no special meeting called…that my understanding was [inaudible].  Thank you.

Simboli.  You're welcome.  Okay.

\*\*\*
         [During a later discussion, following comments by Mrs. Christner, Simboli recognized Plaintiff to speak.]

\*\*\*
[following a question addressed to council by another attendee, Jim Christner]
Plaintiff:  I can't hear you – what did you say?

Christner:  Whose interpretation of the word "nuisance"…Where'd that come from?

Plaintiff:  It shouldn't need an explanation.  [Solicitor]'s a lawyer, he'll tell you.  [gavel pounded several times]  I happen to know [gavel pounded several times again]…

Simboli:  [Solicitor], you wanna answer that for legal…

[Solicitor responds]

Christner:  Is the value of the property going down in value because what's across the street be a nuisance, is that…?

[Solicitor responds. Christner responds.]

Plaintiff:  Why is the value of mine going up and yours is going down?

Simboli [pounds gavel]: Excuse me. Excuse me. You had your turn to speak, Mr. Miller. If you continue to interrupt, I'll have to ask you to leave.

[The next attendee is called, and an exchange occurs between council members and the attendee].

Unknown: Any questions?

Plaintiff:…You say you have 36 streets like signs are blocked…[inaudible]?

Simboli: No Sir.

Miller: What was that?

[Simboli discusses what public works dept. is doing about trees].

Plaintiff: We are the one complaint out of the 36 streets [inaudible] street signs and [inaudible]?

Simboli: So far.

[Another attendee speaks, and then another, Scott Souter, is called to address the group].

[Following Scott Souter's address to Council, regarding his citation for a violation of the Burough's junk vehicle ordinance, and his opinion that the ordinance must be enforced equally.]

Plaintiff: Excuse me…What's your name please?

Souter: Scott Souter.

Plaintiff: Souter? [gavel pounding] You got a letter…

Simboli: Excuse me, sir. Mr. Miller you were the first one to speak and your turn is over. Now if you interrupt me one time, I'll let the Mayor take…

Plaintiff: [inaudible]…I got your attention.[3] I thought you noticed. If I interrupted you, then I apologize. All I wanted to do was make a remark to Mr. Scott S…[inaudible]…

Lyons: I think the President made his point clear.

---

[3] Plaintiff's version is that he said, "Sir, I raised my hand and you acknowledged me, I thought I got your attention."

> Plaintiff: [inaudible]…this meeting.
>
> Lyons: He made his…Officer, remove him. [applause]
>
> Plaintiff: Mr. Simboli, you have to take a meet…you have to take a vote…
>
> Officer Naylor: It's time to go.
>
> Plaintiff: I'm just telling him, miss.
>
> Naylor: Well then, get up.
>
> Plaintiff: I will get up, I just want to make a remark.
>
> Lyons: No, you don't need to make a remark. You're out of here.
>
> Plaintiff:…[inaudible]….this council has to vote on whether they want me removed.
>
> Naylor: You can move on now sir or else you will be cited for Disorderly Conduct.
>
> Plaintiff: I'm just telling him what he do, what to do.
>
> Naylor: Have a nice night.

Plaintiff testified that during the latter exchange, Naylor approached him, grabbed him by the arm, and put something -- Plaintiff surmised it could have been her knuckles, elbow, fist, or an object -- into the back of his neck, and didn't touch him like this for very long. He developed a terrible pain. He said he started to get up, and Naylor "got away" from him; he walked out.

While Defendant submits a transcript that ends after Plaintiff's removal, Plaintiff submits a transcript of the proceedings as continued following his involuntary exit. Plaintiff's submission reflects the following statements:

> Simboli: I have no disrespect for Mr. Miller. Mr. Miller has a problem up there. This counsel is very aware of this problem and if you remember we went after Mr. Miller before and for lack of work, we messed up, and we have to watch how we do it this time.
> ***
> Lyons:…They were heard, and Mr. Miller asked to be heard, he's not running this town. I understand he's going to other towns now with his rules of legal advice, well he's gotta start [inaudible] because we can do the same thing.

The meeting minutes, in turn, reflect the following regarding Plaintiff's removal:

SCOTT SOUTTER said he received a letter from the police to have a vehicle removed which he did…Simboli said that ordinances will be enforced and council will stand behind the Mayor 100%. *There was a round of applause.* Carl Miller then made a remark. Simboli told him that he would have to be removed from the meeting. Miller said that council has to vote on whether to have him removed. At 8:05 PM, Mayor Lyons asked Officer Naylor to remove Carl Miller from council chambers due to his outbursts. Naylor told Miller that it was time to go. She then escorted Miller out telling him to have a nice night.

The day following the meeting, Plaintiff testified that he went to the emergency room with a strained neck or sprained muscles, and pain in his neck and head. They gave him some pills for the pain, and told him to follow up with his PCP.[4] Plaintiff has pointed to no evidence of emotional or psychological treatment resulting from the meeting.

## II. STANDARD OF REVIEW

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. V. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an

---

[4] Plaintiff asserts that he underwent various injections and chiropractic treatments to his neck and back, but his deposition testimony attributes those treatments to injuries sustained in a 2007 car accident. There is no evidence that the discussed treatments were causally related to Naylor's conduct.

element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).

## III. FIRST AMENDMENT[5]

### A. SPEECH

I first address Defendants' Motion for judgment on Plaintiff's First Amendment claims. In this action, I have read Plaintiff's Complaint as asserting a claim for suppression of First Amendment speech, and a claim for retaliation as a result of that speech. In the First Amendment framework, the public nature of a forum delineates the propriety of government conduct therein. In a so-called "limited" or "designated" public forum, the government may restrict speech so long as the restrictions are viewpoint neutral and reasonable. See Galena v. Leone, No. 7-89, 2010 U.S. Dist. LEXIS 19844, at *21 (W. D. Pa. Mar. 5, 2010).[6]

In the context of a public meeting, "[d]efendants have discretion to run their meeting in a way that allows them to operate effectively and efficiently." I.A. Rana Enters. v. City of Aurora, 630 F. Supp. 2d 912 (N.D. Ill. 2009). Generally, in such a setting, a time limitation on speech is a restriction appropriately designed to promote orderly and efficient meetings. Citizens for a Better Lawnside, Inc. v. Bryant, No. 5-4286, 2006 U.S. Dist. LEXIS 93235, at *13-14 (D.N.J. Dec. 22, 2006); Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007). Thus, the presiding officer at a meeting may, without violating the First Amendment, have a speaker removed when she becomes disorderly. See Jones v. Heyman, 888 F.2d 1328, 1329 (11th Cir.

---

[5] Defendants correctly state that the First Amendment speech claims and the Right to Petition claim share the same analysis. Thus, based on my conclusion today, I will also deny the Motion regarding the Right to Petition, and do not address that claim separately. Defendants do not address whether Plaintiff's speech constituted protected petition activity; thus, nor shall I.

[6] Although I need not make the determination now, the borough council meeting at issue might be considered such a forum. See, e.g., Thompson v. Lehman, No. 6-518, 2007 U.S. Dist. LEXIS 66662 (M.D. Pa. Sept. 10, 2007). " The Third Circuit has generally applied the constitutional requirements applicable to designated public fora to limited public fora." Zapach v. Dismuke, 134 F. Supp. 2d 682, 689 (E.D. Pa. 2001).

1989). I will proceed under the assumption, therefore, that imposing a time limit per speaker, and maintaining a policy against interrupting other speakers, are valid time, place, and manner restrictions that pass muster under either type of public forum. See, e.g., Olasz v. Welsh, 301 Fed Appx. 142, 146 (3d Cir. 2008); Eichenlaub v. Township of Indiana, 385 F.3d 274, 281 (3d Cir. 2004).

Determining that a limitation passes constitutional muster, however, does not end the required inquiry. It is well-established that "[t]he government must abstain from regulating speech when the motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995). Thus, "[v]iewpoint-based restrictions violate the First Amendment regardless of whether they also serve some valid time, place, manner interest." Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006). Within this Circuit, therefore, parliamentary rulings made in an ad hoc or non-viewpoint neutral manner may offend the First Amendment. See Wilkinson v. Bensalem Twp., 822 F.Supp. 1154, 1158 (E.D. Pa. 1993).

For example, if a reasonable time, place, or manner limit is enforced in order to keep a meeting under control, and free from irrelevant disruption, then it may be permissible. On the other hand, if there was no reasonable basis for fearing disruption, or the purpose of the enforcement was to prevent or punish an expression of opinion, then it may be impermissible. See id. at 1158-59. Similarly, with respect to First Amendment retaliation in particular, a retaliatory motive is improper.[7] Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003). Consistent with these principles, an unevenly-applied policy may suggest viewpoint non-neutrality. "[W]here the government states that it rejects something because of a certain

---

[7] That is, retaliation for the exercise of First Amendment rights is improper; the First Amendment does not forbid retaliation based, for example, in "generic dislike." See, e.g., Rakovich v. Wade, 850 F. 2d 1180, 1193 (7th Cir. 1988); see also Cole v. Gray, 638 F. 2d 804, 811 (5th Cir. 1981).

characteristic, but other things possessing the same characteristic are accepted, this sort of underinclusiveness raises a suspicion that the stated neutral ground for action is meant to shield an impermissible motive." Ridley v. Massachusetts Bay Transp. Authority, 390 F.3d 65, 87 (1st Cir. 2004).

In this setting, evaluating the present Plaintiff's conduct becomes central. At the motion to dismiss stage, I was unprepared to conclude that Plaintiff's conduct at the meeting was disorderly or disruptive as a matter of law. On the state of the record, it remains that I cannot, as a matter of law, characterize Plaintiff's behavior in that manner, and thus as reasonably subject to the restrictions imposed by Defendant. The transcript does not reflect that Plaintiff at any time used foul or abusive language, or words that are facially confrontational or aggressive.[8] Although Defendants characterize his words differently, Plaintiff asserts that he was not loud or belligerent. Defendants point to Plaintiff's testimony regarding an expletive that Plaintiff used during a side conversation between him and a non-defendant Council member, while another citizen was speaking. There is, however, no evidence of that conversation in the transcript. In addition, there is no suggestion that anyone, other than Plaintiff and the Council member involved, was aware of the conversation or its content at the time of the Defendants' challenged conduct. Plaintiff denies that he interrupted other speakers, and characterizes other citizen speakers as interrupting each other or Council members, without gavel pounding or threat of removal.[9] Defendants, however, contend that Plaintiff, and nobody else, interrupted. I am

---

[8] This is unlike, for example, the case of Olasz v. Welsh, No. 6-348, 2007 U.S. Dist. LEXIS 45785 (W.D. Pa. June 25, 2007), in which the Plaintiff had yelled to another speaker, "sit down and shut up," was called out of order three times prior to being removed from the meeting, and continuously and loudly interrupted while council was voting. Id. at **6-8.

[9] Indeed, Plaintiff contends that he did not interrupt - instead, he states that when Mr. Christener paused, Plaintiff motioned to Simboli that he would like to respond. He said that he spoke "After [Christener] spoke. I didn't interrupt anyone while they were speaking." Plaintiff stated that if he were told not to interrupt, he would have sat down, and not interrupted. One cannot discern from the transcripts alone whether Plaintiff or any other attendee interjected in the middle of any other speech, or cut off any other speaker. As mentioned in an earlier footnote, I

unwilling to permit a lone judge's interpretation of a poor audio recording to shed conclusive light on these questions.

Additionally, one must consider the rules pursuant to which Plaintiff was, purportedly, removed. Defendants repeatedly refer to the "rules" of the forum, but fail to elucidate their source. For example, Defendants state that the forum was intended for citizens "to address Council once in sequential order on a chosen topic." Defendants contend, then, that they acted properly because Plaintiff contravened the rule limiting him to one opportunity to speak. There is no evidence, however, that attendees were advised that they would have a single opportunity to speak at the meeting, or that they may not respond to other comments, or that they must wait to be verbally recognized before doing so. The same is true with the professed prohibition on commenting on or responding to another citizen's comments. Other than the notations on the sign-in sheet, the only guidelines in evidence were announced in Simboli's introductory dictate that a speaker would be afforded one warning prior to removal if becoming "arrogant" or "out of control," and that Simboli would not tolerate other conversations while someone is speaking, Clearly, the mere fact that guidelines may be unwritten or extemporized does not render them unconstitutional or otherwise inappropriate; mere informality, inconsistency, or disorganization does not offend the Constitution. Likewise, a public council has the right -- and perhaps the duty-- to maintain and implement governing procedures. It is, however, impracticable to assess the purported rules in this case against the present record.

In addition to the lack of clarity on the substance of the forum rules, I also note potential inconsistency in their enforcement. For example, according to the transcript, it appears that Plaintiff was the only person verbally advised, when being recognized to speak, that he had five

---

am without the benefit of a reasonably audible recording, or other perspectives -- whether those of Defendants or any other person present at the meeting -- of Plaintiff's conduct.

minutes within which to do so. There is no evidence that speakers were timed. I note, too, that other attendees, such as the Christners, spoke more than once during the meeting, and engaged in verbal exchanges with Council and other attendees.[10] Simboli recognized Plaintiff, and called on him to speak, once again after Plaintiff's initial speech; this calls into question Defendants' present reliance on the "speak once" rule. It seems that other rules to which Defendants now point were not enforced at all. For example, attendee Tina Prinkney was permitted to speak without reprimand, although her name does not appear on the sign-in sheet. Several attendees, such as the Christners and Mr. Sterner, did not note any subject on the sign-in sheet, but spoke at relative length. I cannot conclude, from the transcript, whether anyone other than Plaintiff interrupted another speaker. In sum, assuming the meeting was indeed governed by the rules now stated by Defendants, a genuine issue of fact remains regarding whether, and, if so, why, they were selectively enforced against Plaintiff.

Moreover, viewing the evidence in the light most favorable to the Plaintiff precludes the entry of judgment regarding the motivation behind Defendants' conduct. For example, in response to Plaintiff's question about whether the remarks in the newspaper were personal, Defendant Lyons asked, apparently rhetorically, "Have you ever cooperated with us?" which could, reasonably, be seen as suggesting the possibility of a motive other than maintaining order at the meeting. Similarly, Plaintiff asserts, and submits evidence, that he has publicly criticized Lyons and Simboli in the past.[11] The outstanding question regarding selective enforcement of

---

[10]Defendants contend that Plaintiff was not selectively treated, because Simboli pounded his gavel after another citizen spoke, and said, "Chuckie [Stringhill], Mr. Ambrose has the floor, let him speak please." Mr. Stringhill was indeed asked not to interrupt, but was not treated in precisely the same manner as Plaintiff.

[11] Although I mention the parties' alleged long-standing connection, I emphasize that Plaintiff's Amended Complaint does not rely on protected speech or conduct engaged in at any time prior to the October 10th meeting. Instead, the only protected speech placed at issue in this action occurred at the meeting. I note, too, that our Court of Appeals has found that a "record of political and policy differences" does not give rise to an inference of viewpoint-based regulation. Olasz, 301 Fed. Appx. at 146. It may, however, be relevant evidence nonetheless. See Tarlini, 641 F. Supp. at 441.

the rules likewise bears on the issue of motive.  Nowhere do I have competent record evidence of Defendants' version of events, or, for example, any testimony buttressing the contention that Plaintiff's expressed viewpoint was unrelated to their actions.  On the slim pertinent record submitted to the Court, I cannot conclusively determine that no reasonable juror could find that Defendants lacked a reasonable basis for removing Plaintiff from the meeting.[12]  In sum, I must deny Defendants' Motion regarding Plaintiff's First Amendment suppression and retaliation claims.

### B.  POLITICAL PARTY

Next, I address Defendants' challenge to Plaintiff's political discrimination claim.  Plaintiff's Amended Complaint appears to assert that he was removed from the meeting because he is a Republican, and the Defendants are Democrats.  In order to make such a claim, plaintiff must adduce evidence that would permit a rational jury to find that the challenged conduct occurred and stemmed from a politically-based motive.  See Cortes-Reyes v. Salaz-Quntana, 608 F. 3d 41, 48 (1st Cir. 2010).[13]  Merely knowing about a protected characteristic, however, or juxtaposing unfair treatment with the fact of different political parties, is not enough to support a claim.  Id.  Plaintiff, in defense of this claim, submits a sworn statement that in 2005, he and Lyons traveled together with the stated purpose of registering as Democrats; hence, he argues, Defendants are aware of his political affiliation.  He also asserts that presently, he is registered as either a Democrat or member of the Constitutional Party, but also that he has been a lifelong Republican.

---

[12] I emphasize that it is immaterial that Plaintiff was able to speak fully, without interruption, on the subject that he initially intended to address at the meeting; it is likewise immaterial whether his property was, in fact, deplorably maintained and subject to delinquent taxes.  These facts, if true, simply do not rule out a later-occurring First Amendment violation.

[13] As do most political discrimination cases, Salaz-Quntana arose in an employment setting.

The connection between these facts, and a claim that the events of the October, 2007 meeting were somehow motivated by Plaintiff's membership in a particular political party, is far too ambiguous and tenuous to overcome summary judgment. Plaintiff's conclusory testimony that he and Defendants are "political enemies" does not strengthen the connection. Nowhere else in the record is there any suggestion that Plaintiff's mutable political affiliation played a role in his ejection from the meeting, or that any Defendant knew that he was a Republican. These facts alone, therefore, are insufficient to permit a reasonable jury to find that Defendant's conduct was motivated by Plaintiff's political status as a Republican. Defendants are entitled to judgment on this claim.

## IV. QUALIFIED IMMUNITY

I next address Defendants' claim of qualified immunity. When assessing qualified immunity, the court must determine whether defendants violated plaintiff's constitutional rights; second, if the court finds a violation, it must determine whether the violated right was clearly established. Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). A right is clearly established where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

> The Supreme Court has stated that if the law is firmly established, the qualified immunity defense should normally fail because a reasonably competent official should know the law governing his conduct. If plaintiff was removed from public meetings because of his viewpoint and if he was retaliated against because of the exercise of his First Amendment Rights, a qualified immunity defense must fail because the law is firmly established on these issues. In other words, there is simply no possibility that a competent government official could believe that he or she can remove an individual from a public meeting because of his or her viewpoint, or retaliate for the exercise of free speech.

Thompson v. Lehman, No. 6-518, 2007 U.S. Dist. LEXIS 66662, at **17-18 (M.D. Pa. Sept. 10, 2007) (citation omitted).

Although qualified immunity is a question of law, it must be left to the jury when it revolves around a disputed fact. "Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor." Monteiro, 436 F.3d at 405. In this case, as discussed supra, it is not clear that no reasonable juror could conclude that Lyons and Simboli were motivated by viewpoint or content bias. If the decision to remove Plaintiff was not reasonable for purposes of the First Amendment, it cannot be reasonable for purposes of qualified immunity. "In other words, [Defendants] could not have discriminated against [Plaintiff] and, at the same time, reasonably believed that [they] were not discriminating." Acosta v. City of Costa Mesa, No. 6-0233, 2008 U.S. Dist. LEXIS 100412, at *22 (C.D. Cal. Dec. 2, 2008). Under present circumstances, I cannot find that Defendants Simboli and Lyons are entitled to qualified immunity.

I reach a different conclusion, however, with respect to Plaintiff's First Amendment claim against Defendant Naylor. Plaintiff now asserts that he and Naylor had an "unsatisfactory personal association for several years" prior to the meeting at issue, which resulted in her harboring personal animosity towards him. On the other hand, in his deposition, he testified that he did not know her at the time of the meeting, other than that she had, perhaps, responded to a complaint that he called in about a motorbike being ridden near his home. These assertions, accepted as true, do not raise an inference that her conduct was impermissibly motivated by Plaintiff's viewpoint. Moreover, even if there are genuine issues of material fact regarding whether Simboli and Lyons acted reasonably in calling for Plaintiff's removal, his right to continue speaking, or remain at the meeting, was not so clearly defined as to demonstrate that Naylor's conduct was unlawful. Given a clear directive from the Mayor, and a question of fact regarding whether that directive was reasonable, a reasonable police officer on the scene could

have believed -- even if mistakenly -- that it was proper for her to remove Plaintiff when he continued to speak. See Acosta, 2008 U.S. Dist. LEXIS 100412, at **24-25.

## V. MONELL CLAIM

I next turn to the Defendants' contention that Plaintiff's Monell claim against the Borough must fail. In order to prove such a claim, a municipal policy or custom must have been the moving force behind the violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Plaintiff alleges that his rights were violated as the result of Defendants' "established and announced" policy of precluding discussion without oral approval and permission of the presiding officer. Plaintiff does not challenge the constitutionality of this policy, in itself; instead, he contends that Defendants employed the policy to carry out unconstitutional acts. "Local governing bodies…can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690. The parties agree that they acted pursuant to their meeting rules; they do, however, disagree as to whether Defendants properly implemented those rules -- a disagreement reflected in the inconclusive nature of the facts of record.[14] Under the circumstances, I cannot grant judgment in Defendants' favor on Plaintiff's Monell claim.

## VI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to state a claim for intentional infliction of emotional distress, a Plaintiff must show "extreme and outrageous conduct." Brown v. Muhlenberg Twp., 269 F.3d 205, 218 (3d Cir. 2001). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

---

[14] As I noted at the time of my January 15, 2009 Order, there remains no information regarding whether Mayor Lyons was acting in his official duties at the time of the meeting.

regarded as atrocious, and utterly intolerable in a civilized society." Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa. Super. 1997). Plaintiff must also show that the conduct proximately caused genuine and substantial emotional distress -- distress "so severe that no reasonable person could be expected to endure it." Moreau v. Walgreen Co., No. 9-3635, 2010 U.S. App. LEXIS 14980, at *5-6 (3d Cir. July 21, 2010). Competent medical evidence is required to support an intentional infliction claim. Boria v. Bowers, No. 6-4384, 2009 U.S. Dist. LEXIS 57005, at *58 (E.D. Pa. Mar. 31, 2009).

Plaintiff's allegations simply do not rise to the level of outrageousness required by this tort. On the record before me, it would be wholly and clearly improper to contemplate extending this tort to cover the conduct of either Lyons or Simboli. As regards Naylor, Plaintiff asserts that she "jammed" something -- fists, knuckles, or an object -- into the back of his neck, after which he stood up and walked out of the meeting. The next day, he went to the emergency room, where he was diagnosed with muscle strain or sprain, and sent home with pain pills and instructions to follow up with his PCP. This conduct is not sufficiently "outrageous" to sustain a claim. Moreover, even if a reasonable jury could find that Naylor's conduct was atrocious, utterly intolerable, or beyond all possible bounds of decency, Plaintiff has not made any showing, through medical evidence or otherwise, that he suffered the degree of emotional distress contemplated by this tort. Accordingly, Plaintiff has failed to show the existence of an element essential to his case, and Defendants are entitled to judgment on this claim.

## VII. PLAINTIFF'S MOTION

Finally, I address Plaintiff's Motion for summary judgment in his favor. Primarily, he contends that the facts set forth above entitle him to judgment as a matter of law. For the reasons set forth supra with respect to Defendants' Motion, however, Plaintiff's likewise must be denied.

I cannot find, as a matter of law, that no reasonable jury could render a verdict in Defendants' favor.

**CONCLUSION**

In sum, viewing all available facts in a light most favorable to the non-moving party, I will grant Defendants' Motion for Summary Judgment in part. The Motion will be granted with respect to Plaintiff's claims for intentional infliction of emotional distress and political party discrimination, and to the extent that Defendant Naylor is entitled to qualified immunity. The remainder of the Motion will be denied, as will be that of Plaintiff. This litigation shall proceed, then, solely on the claims that Defendants Lyons, Simboli, and the Borough, violated Plaintiff's First Amendment rights to speak, petition the government, and be free of retaliation for protected conduct at the October 10th meeting.

An appropriate Order follows.

**ORDER OF COURT**

AND NOW, this 29th day of October, 2010, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment is DENIED. Defendant's Motion for Summary Judgment is GRANTED in part, and the remainder is DENIED. The Motion is granted with respect to Plaintiff's claims against Defendant Naylor, and with respect to his claims for intentional infliction of emotional distress and political discrimination. The parties shall appear for a pretrial/settlement conference on Tuesday, November 23, 2010, at 11:30 AM, in the chambers of the undersigned.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Judge, United States District Court